CULPEPPER, Judge.
This is a workmen’s compensation case. The district judge awarded plaintiff benefits for total and permanent disability. Defendant appealed.
The sole issue is the extent and duration of plaintiff’s disability.
On Friday, December 27, 1968, plaintiff was working as a carpenter for the defendant. He was constructing shoring in a ditch approximately 10 feet deep when a 4" x 4" timber fell and struck him on the neck and shoulder.
On that same day, he was seen by Dr. Edward W. Phillips, Jr., an orthopedic surgeon in Lake Charles. This physician diagnosed abrasions of the head, neck and shoulder and also a sprain in the area of the cervical spine. X-rays taken at the time showed pre-existing narrowing of the in-tervertebral spaces between C5-6 and C6-7. Also, plaintiff was then 56 years of age and there was pre-existing arthritic calcification of these vertebrae. Also, plaintiff had a deformed left elbow due to a previous fracture. Medication for pain was prescribed and plaintiff was instructed to return for re-evaluation at two-week intervals.
Plaintiff returned to work for the same employer on the following Monday, December 30, 1968, but he says he was assigned to bench work. He was seen again by Dr. Phillips on January 9, 1969, at which time stiffness in the neck was found, but Dr. Phillips felt plaintiff was improving. Plaintiff continued to work.
In a report mailed by Dr. Phillips to the defendant employer on January 27, 1969, it is stated: “He is improved just about exactly as one would expect him to. In view of the considerable amount of arthritis in his neck, it may be that he will have neck pain off and on for several months in the future. He is to use a cervical traction apparatus at home to decrease the stiffness. There has been apparently no residual disability.”
Plaintiff continued to work and was seen at two-week intervals by Dr. Phillips. On May 23, 1969, Dr. Phillips wrote another report stating that plaintiff had asked for a release so that he could go to work on a job in Shreveport. In this report, Dr. Phillips states: “It was felt that he could perform this type work and he was given a release. I believe he will have some stiffness in his neck in the future, partly as a result of his injury and also because of arthritic changes in the neck. No further treatment is necessary.”
About the first of June, 1969, plaintiff went to Shreveport where he worked as a carpenter in a “door shop.” His duties consisted principally of framing doors and installing door jambs. While in Shreveport, he was seen at the request of his own attorney by Dr. Heinz K. Faludi, a neurosurgeon. This physician found no muscle spasm, no abnormality of the lordotic curve, no atrophy, no nerve root pressure, no sensory deficit and, generally, no disabling neurological condition. Of course, x-rays showed the pre-existing narrowed spaces at C5-6 and C6-7 and the arthritic spurring. Dr. Faludi expressed the opinion that plaintiff could return to work as a carpenter, the only limitation being that if he had to work for extended periods of time with his head in either a raised or a lowered position, he would have some difficulty. Dr. Faludi estimated that within two or three months after his examination on June 26, 1969, plaintiff should be recovered to the same status as before the accident.
After the job terminated in Shreveport, plaintiff returned to Lake Charles where he worked as a carpenter foreman from July until November of 1969. He was seen again by Dr. Phillips on November 3, 1969 for complaints of stiffness in the neck. At that time, the doctor found the neurological examination normal and no muscle spasm. There was no change from the pre-existing condition and it was felt that plaintiff could continue to work as a carpenter.
*594 Plaintiff next worked as a carpenter and a foreman for C. F. Braun Construction Company from December of 1969 until August of 1970. Most of this time he worked as a carpenter but says that he did light bench work rather than heavy industrial construction. The rest of the time he worked as a carpenter foreman.
On March 20, 1970, plaintiff was examined, at the request of his attorney, by Dr. Homer Kirgis, a neurosurgeon of New Orleans. This physician’s testimony is not consistent with that of the other doctors. He found nerve root pressure, muscle spasm, and “chronically ruptured inter-vertebral discs” at the 4th, 5th and 6th cervical intervertebral spaces. It was the opinion of Dr. Kirgis that these ruptured discs preexisted the accident, along with the arthritic condition, and that the injury caused aggravation which is disabling for carpenter work. One of the symptoms relied on by Dr. Kirgis was diminished grip in the left hand which the doctor opined was due to nerve root pressure. However, another logical reason for the lack of grip is the deformed and weakened left elbow.
On September 16, 1970, plaintiff was seen on the request of defendant by Dr. E. H. Rafes, a neurosurgeon of Beaumont, Texas. This physician conducted a strictly neurological examination and concluded there was no nerve root pressure or other disc condition involving the nerves. He stated there was a marked functional overlay and that plaintiff appeared to exaggerate the stiffness in his neck. He found no muscle spasm and stated that as far as the neurological examination was concerned, there was no reason why plaintiff could not return to work as a carpenter. Dr. Rafes refrained from expressing any orthopedic opinion and stated that Dr. Phillips, the treating physician, and also an orthopedic surgeon, could best evaluate this condition.
Plaintiff was seen again by Dr. Phillips on March 16, 1970. The doctor’s report of this examination states “The patient may have sustained a cervical spine sprain in the accident of 1968. At present he offers no objective findings of neck disability. The rather marked stiffness in his neck is hard to explain. There appears to be no neurological deficit. Apparently' he sustained a neck sprain and has mild residual disability.”
A supplemental report by Dr. Phillips dated September 10, 1970, states “I believe the disability involved in the neck in the above named patient probably represents approximately 5% only. I do not believe this would prevent him from performing his regular duties as a carpenter. The disability more explicitly would involve pain or limitation of neck motion after certain activities, such as looking down or looking up for prolonged periods.”
Despite a strenuous cross-examination by counsel for plaintiff at the trial on September 27, 1970, Dr. Phillips would not retreat from his position that plaintiff could return to work as a carpenter.
In our view, a clear preponderance of the expert medical testimony shows that plaintiff can return to work as a carpenter. This is strongly corroborated by the fact that plaintiff actually did return to such work and performed the duties of a carpenter and a carpenter’s foreman off and on for almost two years. Of course, it was difficult for the physicians to state how much of the stiffness in the neck was due to the pre-existing condition of this 56 year old carpenter and how much was due to the accident. All of the physicians said that the pre-existing condition caused stiffness and discomfort. Dr. Kirgis, plaintiff’s strongest witness, even testified that prior to the accident there were three ruptured intervertebral discs. We conclude that plaintiff has failed to prove he was disabled as of the date of the trial of this case.
However, plaintiff is entitled to benefits for the period of time which he proved he was disabled. The most reliable opinion in this regard is that expressed by *595 Dr. Phillips, who is an orthopedic surgeon and was the treating physician for the entire time involved. The report of his examination of May 23, 1969 was that plaintiff could return to work as a carpenter. Of course, following his discharge by Dr. Phillips on that occasion, plaintiff actually did go to Shreveport and work as a carpenter and continued to do so thereafter. We will allow benefits from the date of the accident until May 23, 1969.
For the reasons assigned, the judgment appealed is amended so as to limit the payment of workmen’s compensation benefits to the period from December 27, 1968 through May 23, 1969. Otherwise than as herein amended, the judgment is affirmed. All costs of this appeal are assessed against the plaintiff appellee.
Affirmed as amended.